UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TEODORO MOLANO SALAS,

          Petitioner,

vs.                                 Case No. 8:05-CV-1685-T-27TBM
                                 Crim Case No. 8:04-CR-109-T-27TBM

UNITED STATES OF AMERICA,

          Respondent.
_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1). In Ground One of his Petition, Petitioner claims that his attorney failed to file an appeal from his judgment although Petitioner "requested" that he do so. Petitioner contends that he was accordingly denied the effective assistance of counsel. Consistent with *United States v. Gomez-Diaz*, 433 F.3d 788 (11th Cir. 2005), an evidentiary hearing was conducted on Petitioner's claim on December 8, 2006.[1] Based on the testimony and evidence presented, this Court finds and concludes that Petitioner was not denied the effective assistance of counsel. Specifically, Petitioner's testimony that he requested that Attorney Hambrick file an appeal is not credible. The other claims raised by Petitioner have no merit. Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is DENIED.

**Procedural History**

Petitioner was indicted and charged with possession with intent to distribute and conspiring

---

[1] Counsel was appointed to represent Petitioner during the evidentiary hearing.

to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine while on board a vessel subject to the jurisdiction of the United States. (CR Dkt. 1). Pursuant to a written plea agreement, Petitioner pleaded guilty to Count One. (CR Dkts. 51, 124). Petitioner's plea agreement set forth, among other things, the specific charge to which he was pleading guilty, the penalties prescribed by statute, the constitutional rights he was waiving by pleading guilty, including his right to appeal or seek collateral relief and the impact of the sentencing guidelines. (CR Dkt. 51). In his plea agreement, Petitioner expressly waived "the right to appeal defendant's sentence, directly or collaterally, on any ground, including the applicability of the 'safety valve' provisions contained in 18 U.S.C. § 3553(f) and USSG §5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines . . . ." (CR Dkt. 51, p. 10, ¶ B(4)).

On September 24, 2004, Petitioner was sentenced to 97 months imprisonment, to be followed by 36 months of supervised release. Petitioner received a three level downward departure based on substantial assistance, pursuant to the Government's USSG § 5K1.1 motion. (CR Dkts. 218, 223). Petitioner did not appeal. His *pro se* construed motion to file belated appeal, filed more than six months after he was sentenced, was denied. (CR Dkts. 363, 364).

***Ground One: "Denial of right to appeal because of ineffective assistance of counsel."***

Petitioner alleges that he requested his attorney to appeal his sentence but that his attorney failed to do so. During the evidentiary hearing, Petitioner testified that he wanted to appeal because he thought he was entitled to a minor role adjustment. Petitioner confirmed, however, that he was

happy with his sentence, as his co-defendants received sentences of 135 months.[2]

Petitioner testified that immediately after sentence was imposed, he asked the interpreter to tell his attorney to file an appeal. According to Petitioner, his attorney tapped him on his shoulder and gave him the "thumb's up sign," which Petitioner understood to mean that his attorney was indicating he would file the appeal. Petitioner acknowledged that he did not describe the conversation he claims to have had with the interpreter in his § 2255 motion. Nor did he describe any such conversation in his March 31, 2005 construed motion to file belated appeal. (CR Dkt. 363). He testified that it wasn't until he conferred with a fellow inmate that he included an account of that conversation in his letter to the Court on April 12, 2005. Petitioner, who speaks Spanish, testified that three days after sentencing, he had another inmate write to Hambrick asking if an appeal had been filed. He testified he told the inmate to include in the letter that he had asked the interpreter to tell his attorney to file the appeal.

Petitioner's account of what occurred in the courtroom between him and the interpreter is not credible. Likewise, Petitioner's contention that he directed a letter to be sent to Hambrick three days after sentencing is of dubious credibility. Hambrick testified that he received no such letter, although he had given Petitioner a business card. Hambrick explained that it is not unusual for him to give a "thumb's up" sign to a client after a sentencing hearing, indicating that things went well.[3]

Hambrick testified that before Petitioner entered his guilty plea, with the assistance of an interpreter, he reviewed the plea agreement with Petitioner and explained the appeal waiver clause.

---

[2] Petitioner acknowledged that he pleaded guilty "because I was guilty," "I did not want to go to trial" and that "I wanted to plead guilty."

[3] The testimony is paraphrased by this Court, as a transcript of the hearing has not been prepared..

According to Hambrick, he discussed with Petitioner the possible sentence range and they agreed that unless "something catastrophic" occurred, something "outside the realm of what was expected," there would be no appeal. He testified that the sentence imposed was within the range he and Petitioner reasonably expected. He did not have a specific conversation with Petitioner after sentence was imposed because of the consultation he had with Petitioner before sentencing. According to Hambrick, Petitioner never asked him to appeal.

Based on Hambrick's testimony, which was credible, this Court finds that, prior to sentencing, Hambrick discussed with Petitioner the advantages and disadvantages of pursuing an appeal and Hambrick confirmed with Petitioner the circumstances under which Petitioner would want to appeal. Petitioner agreed with Hambrick that no viable appeal would be available if a sentence within the range they reasonably expected was imposed. The sentence imposed was what Petitioner and Hambrick reasonably expected. In Hambrick's opinion, an appeal could have been damaging to Petitioner because of his cooperation which resulted in the § 5K1.1 motion.

This Court finds that Petitioner never indicated to Hambrick that he wanted to appeal. According to Hambrick, if Petitioner had instructed him to appeal, he would have. It is apparent that Hambrick would have had no reason not to file an appeal on behalf of Petitioner, if he had been asked to do so. Hambrick is an experienced criminal defense attorney who regularly accepts CJA appointments to represent indigent defendants and who regularly files appeals on behalf of those clients. His CJA compensation would have been increased if an appeal had been filed.

The first indication Hambrick received that Petitioner desired to appeal was "six or seven months" after sentencing. (Gov't Ex. 1). That correspondence was post-marked May 20, 2005 and addressed to Hambrick at a wrong address in Largo, Florida, rather than his office address in

Clearwater. After receiving Petitioner's letter, Hambrick promptly responded on June 3, 2005. (Petitioner's Ex. 3). Hambrick's explanations in his response corroborate the discussions he had with Petitioner before sentencing concerning the appeal waiver and their agreement concerning the circumstance under which an appeal would be filed. It is apparent, and this Court so finds, that Petitioner initially had no desire to appeal, consistent with his discussions with his attorney, but apparently reconsidered months later, after speaking with a fellow inmate and having learned that several co-defendants had appeals pending.

Hambrick's testimony, which the Court finds to be credible, establishes that he had the appropriate discussion with Petitioner concerning the advantages and disadvantages of an appeal and that Hambrick made a "reasonable effort to determine the client's wishes." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). During those discussions, Petitioner confirmed to Hambrick that he did not want to appeal unless the sentence imposed was beyond what they reasonably expected. Since the sentence was within what Petitioner and his attorney expected, there was no reason for Hambrick to think that Petitioner would want to appeal.

After sentence was imposed, the Court advised Petitioner of his limited appellate rights, consistent with his plea agreement. That Hambrick did not consult with Petitioner following imposition of sentence does not mitigate against a finding of reasonable and non-deficient performance. Given Hambrick's consultation with Petitioner prior to sentencing, it was not necessary that he again review Petitioner's appellate rights. *See Roe v. Flores-Ortega*, 528 U.S. at 479-80 (rejecting a brightline rule that counsel must always consult with the defendant regarding an appeal). Hambrick fairly concluded that Petitioner, acting rationally, would not want to appeal since the Court imposed a sentence which they expected. There were no non-frivolous grounds for appeal. In light of the understanding reached between Hambrick and Petitioner, there was no reason for

Hambrick to revisit Petitioner's appellate options with him. Under these circumstances, "it would be difficult to say that counsel [was] 'professionally unreasonable.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000) (citing *Strickland*, 466 U.S. at 691.)

An attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner. *Gomez-Diaz,* supra at 792. Where, however, as here, Petitioner does not specifically request that his attorney file an appeal, the attorney does not render ineffective assistance of counsel by failing to pursue an appeal he was not requested to pursue. Attorney Hambrick's conduct therefore met "an objective standard of reasonableness" and his failure to file an appeal under these circumstances cannot be considered "professionally unreasonable." *Strickland v. Washington*, 466 U.S. 668, 691 (1969). This is not a case where counsel neglected to consult with the client about the client's appellate rights or disregarded a specific request that counsel file an appeal. Accordingly, Ground One has no merit and must be denied.

### *Ground Two: "Petitioner entitled to appeal his sentence regardless of appeal waiver."*

Given this Court's finding that Petitioner elected not to file an appeal, Ground Two must be denied. Notwithstanding, the change of plea colloquy demonstrates that Petitioner knowingly and voluntarily waived his right to appeal as part of a negotiated plea agreement. The Magistrate Judge specifically reviewed the appeal waiver with Petitioner when he pleaded guilty and Petitioner acknowledged his understanding in that regard. (CR Dkt. 278, pp. 30-31). A sentence appeal waiver is enforceable if the waiver was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993); *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).

Petitioner contends that "he did not receive the benefit of his negotiated agreement with the

government" because he did not receive a minor role adjustment. (CV Dkt. 1, p. 4). That contention is belied by the terms of the plea agreement, as well as Hambrick's testimony. The plea agreement does not contain a minor role adjustment recommendation and Hambrick confirmed that the Government made no such recommendation. While the Government did not oppose Petitioner's request for a minor role adjustment at sentencing, the Court was not bound by that non-opposition, even if construed as a recommendation. Petitioner expressly agreed in his plea agreement that the Court was not bound by sentencing recommendations. (CR Dkt. 51, pp. 9-10, ¶ B(3)). Moreover, Petitioner's appeal waiver expressly addressed such a circumstance. (CR Dkt. 51, p. 10, ¶ B(4)) (Petitioner expressly waived "the right to appeal defendant's sentence, directly or collaterally, on any ground, including the applicability of the 'safety valve' provisions contained in 18 U.S.C. § 3553(f) and USSG §5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines...")

The sentence imposed was entirely consistent with the plea agreement. Petitioner knowingly and voluntarily waived his right to appeal his sentence. Ground Two has no merit and must therefore be denied.

### *Ground Three: "Sentence imposed violates the holding in United States v. Booker, thus, an exception to the appeal waiver."*

Ground Three must be denied as Petitioner knowingly and voluntarily waived his right to appeal, directly or collaterally, the sentence imposed. (CR Dkt. 51, p. 10, ¶ B(4)). Moreover, *Booker* is not retroactively applicable on collateral review.[4] *See Varela v. United States*, 400 F.3d 864, 867-

---

[4] *Booker v. United States*, 543 U.S. 220 (2005).

68 (11th Cir.), *cert denied*, 126 S.Ct. 312 (2005).[5]

### *Ground Four: "Appeal waiver was unknowingly and involuntarily entered."*

As discussed, the change of plea colloquy demonstrates that Petitioner knowingly and voluntarily waived his right to appeal as part of a negotiated plea agreement. The Magistrate Judge specifically reviewed the appeal waiver with Petitioner when he pleaded guilty and Petitioner acknowledged his understanding in that regard.(CR Dkt. 278, p. 30-31). A sentence appeal waiver is enforceable if the waiver was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993); *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997). Ground Four is accordingly denied.

Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is DENIED. All pending motions are denied as moot. The clerk is directed to enter judgment against Petitioner and close this case.

**DONE AND ORDERED** in chambers this 29th day of January, 2007.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to:
Petitioner/pro se
Counsel of Record

---

[5] Petitioner's contention that he should be released from his appeal waiver because he could not have knowingly waived a *Booker* objection, "because no such right existed when he signed the plea agreement," has been rejected in this Circuit. *United States v. Frye*, 402 F.3d 1123, 1129 (11th Cir.), *cert. denied*, 125 S.Ct. 2986 (2005).